**SO ORDERED.**

**SIGNED this 06 day of August, 2010.**

_____
J. Rich Leonard
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

MARY THERESA SCOTT,                           CASE NUMBER: 10-00794-8-JRL
                                              CHAPTER 7
        DEBTOR.
_____

ORDER DENYING MOTION TO DISMISS
DEBTOR'S CHAPTER 7 CASE

This matter came before the court on Metropolitan Health Corporation ("Metropolitan") and Michael Faas' ("Faas;" parties collectively known as "Movants") motion to dismiss Mary Scott's ("debtor" or "Scott") bankruptcy case pursuant to 11 U.S.C. § 707(a) of the Bankruptcy Code ("Code") or, in the alternative, for this court to abstain from hearing the case pursuant to 11 U.S.C. § 305(a)(1). An objection to that motion was filed by debtor. A hearing was held on these matters on June 21, 2010, in Raleigh, North Carolina.

**JURISDICTION**

Title 28, § 1334 of the United States Code conveys original and exclusive jurisdiction of all cases under Title 11 to the district courts. This court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), which this

court may hear and determine.

## BACKGROUND FACTS

1. A voluntary chapter 7 petition was filed on February 3, 2010 by Mary Theresa Scott as debtor.

2. In 1997, debtor was hired by Michael Faas, Metropolitan's President and Chief Executive Officer, and the Board of Directors of Metropolitan as the Senior Vice-President of Network Operations.

3. Debtor filed a *qui tam* action under seal against movants under the False Claims Act, 31 U.S.C. § 3729 *et seq.* on July 2, 2002. The action was captioned United States of America, ex rel Mary Scott v. Metropolitan Health Corp. et. al. and was filed in the Western District of Michigan ("Michigan Court"), Southern Division, case number 01:02 CV 0485. The United States intervened in 2003 and the complaint was unsealed.

4. Debtor continued to be employed by Metropolitan throughout the *qui tam* action, but was reassigned to a "dead-end" position in February/March of 2002; placed on administrative leave effective June 12, 2002; and terminated from Metropolitan effective January 30 or 31, 2003.

5. In 2003, movants settled the case and agreed to pay $6,250,000.00 with interest to the United States. As part of that settlement, debtor was to receive $1,125,000.00 (18% of settlement amount) for her role as the "relator" under 31 U.S.C. § 3730(d). In January 2004, debtor received her first relator fee settlement payment. Payments were made to the United States and then debtor's portion would be remitted to her.

6. After the settlement, debtor continued to pursue claims against movants for: (1)

violating the anti-retaliation provision of the False Claims Act, § 3730(h), by discharging her and otherwise taking adverse action against her; (2) breaching her contract of employment; and (3) defaming her. The Michigan Court entered summary judgment on the remaining matters against the debtor on June 23, 2005 and entered an order for debtor to pay attorneys fees and expenses of movants in the amount of $18,966.40 on September 29, 2005. An additional award for sanctions against debtor and in favor of movants was entered in the amount of $1,608,268.80 on December 13, 2005. On that same day, the Michigan District Court ordered the United States to deposit future relator fee payments due to debtor under the *qui tam* settlement to the "Court's registry for later distribution," which essentially garnished the funds and applied them to the attorney fees and costs and sanctions judgment entered against debtor.

7. Debtor and her husband, Mark Scott ("Mark"), entered a post-nuptial agreement on June 29, 2005. The document states that when the couple was married their earning potential was nearly equal. However, due to the debtor's lack of income and contribution to the family finances since being terminated from Metropolitan in 2003 the debtor had not made equal contributions and a cash payment of $675,000 was determined to be owed to Mark. The agreement specifies how that payment will be made, which includes $200,000 of debtor's relator fee being paid to Mark upon its receipt. Furthermore, the document stipulates if the parties were to terminate their marriage the debtor would have no rights to the cash payment proceeds.

8. On July 13, 2005, debtor and her husband created Bethel Technologies, LLC and were 50/50 owners in the company. Debtor alone managed the company. Bethel

        Technologies, LLC was dissolved on February 9, 2010. On August 15, 2005, Mark Scott created Bethel Real Properties, LLC and served as its sole shareholder. Debtor again was tasked with managing the company. Several monetary transfers were made between Bethel Technolgies, LLC and Bethel Real Properties, LLC (collectively known as the "Bethel entities") and Mark Scott.

9. On October 26, 2005 debtor and Mark entered a retainer agreement with Berry Moorman PC, a law firm with offices throughout Michigan, and assigned them an interest in her remaining *qui tam* payments for a total of $425,000.00. Berry Moorman filed a UCC-1 Financing Statement to perfect their interest on November 8, 2005.

10. Debtor moved for post-judgment recusal of the Michigan District Court judge and disbursement of registry funds that were garnished. The Michigan District Court denied debtor's motion for recusal and also denied the motion for recusal pending appeal and staying any debt collection efforts on February 23, 2006.

11. Debtor appealed the orders of the Michigan District Court, but the Sixth Circuit Court of Appeals affirmed the Michigan District Court by an order filed on April 3, 2007. Debtor then appealed to the Supreme Court of the United States of America, but certiorari was denied. The matters returned to the Michigan District Court for post-judgment collection in March of 2008. Collection efforts were ongoing until debtor filed for bankruptcy relief.

## PROCEDURAL HISTORY

On February 3, 2010, debtor filed an accelerated bankruptcy petition seeking relief under chapter 7 of the Code. An order appointing Joseph N. Calloway ("trustee") as chapter 7 trustee was

entered on February 4, 2010. On February 12, 2010, debtor initiated an adversary proceeding against movants to enjoin ongoing post-petition collection activities in the Michigan court. That matter has now been resolved.

On April 7, 2010, movants filed a motion to dismiss debtor's bankruptcy case, to which debtor filed a response in opposition on May 25, 2010. On May 5, 2010, movants initiated an adversary proceeding against debtor to determine dischargeability of the judgment entered in their favor under § 523(a)(6) alleging willful and malicious injury. A hearing on the motion to dismiss the case was held on June 21, 2010 and is the subject of this order.

## ARGUMENTS BY THE PARTIES

Movants set forth a two-fold argument for dismissal of debtor's case pursuant to § 707(a), or in the alternative, for this court to abstain under § 305(a)(1). Their primary argument focuses on the debtor's purported lack of good faith in filing for bankruptcy relief. Emphasis is given to the Marino factors adopted by this district by Judge A. Thomas Small in In re Marino, 388 B.R. 679 (Bankr. E.D.N.C. 2008) and a battery of cases from throughout the country. In the alternative, movants assert that the court should abstain from hearing debtor's bankruptcy case because the debtor and the creditors would be better served by dismissal under § 305.

In response to the movants' arguments, the debtor objects to several of the factual allegations set forth by the movants and provides her account of the facts. The debtor recognizes the number of cases presented in support of the movants' argument, but emphasizes the distinctions between the facts of those cases and the facts of the case at bar. Debtor's Objection to Motion to Dismiss Debtor's Chapter 7 Case ¶ 18. With regard to the § 305(a)(1) argument, the debtor asserts the movants have failed to meet the burden of proving that the interests of the debtor and her creditors

5

would benefit from dismissal.

Movants cite a battery of cases in their motion they assert should compel a ruling in their favor. Primarily, the movants suggest that "numerous courts faced with situations where a debtor filed its bankruptcy petition . . . in response to a recently-entered judgment, pending litigation or a collection action have dismissed . . . ." Movants' Motion to Dismiss Debtor's Chapter 7 Case ¶ 21. As support they rely on the holdings of In re Marino, 388 B.R. 679 (Bankr. E.D.N.C. 2008); In re Lombardo, 370 B.R. 506 (Bankr. E.D.N.Y. 2007); Huckfeldt v. Huckfeldt (In re Huckfeldt), 39 F.3d 829, 832 (8th Cir. 1994); Industrial Insurance Services, Inc. v. Zick (In re David G. Zick), 931 F.2d 1124 (6th Cir. 1991); and In re Lichtenstein, 328 B.R. 513 (Bankr. W.D.K.Y. 2005). Upon examination of those cases, this court finds that each is distinguishable in some regard and only the Marino decision is directly applicable precedent.

The facts of Marino involve divorce proceedings and the debtor's attempt to avoid payment to the attorneys by filing for relief under chapter 7 of the Code. The parties were attempting to arbitrate the fee dispute; however, before the arbitration hearing Ms. Marino filed bankruptcy. The attorneys filed a motion to dismiss based on § 707(a) and asserted that Ms. Marino's petition was filed in bad faith as evidenced by her ability to pay[1] and her primary purpose in filing being to frustrate their efforts to collect legal fees that Ms. Marino agreed would be paid through the proceeds of any equitable distribution she received. The court decided Ms. Marino's filing was in bad faith and arrived at that conclusion using a totality of the circumstances test. After applying the illustrative fourteen factors test of McDow v. Smith (In re Smith), 295 B. R. 69 (E.D. Va. 2003) to the facts before it, the Marino court found cause to dismiss. The court replicates that analysis in this

---

[1]The court noted the debtor was employed as a senior funding coordinator for a financial institution with a net monthly income of $2,745.50 and no expectation of changes in her income.

6

case.

## DISCUSSION

*Dismissal Pursuant to § 707(a)[2]*

This court has established a non-exclusive list of fourteen factors that should be examined in determining whether a debtor filed their petition in good faith. In re Marino, supra. In applying the factors the court should evaluate the totality of the facts and circumstances. Id. at 682 (citing Perlin v. Hitachi Capital America Corp. (In re Perlin), 497 F.3d 364 (3rd Cir. 2007)); see McDow, 295 B.R. at 74. The Marino factors include:

1. The debtor reduces creditors to a single creditor in the months prior to the filing of the petition;
2. The debtor failed to make lifestyle adjustments or continued living an expansive or lavish lifestyle;
3. Debtor filed the case in response to a judgment [in] pending litigation . . .;
4. The debtor made no efforts to repay her debts;
5. The unfairness of the use of Chapter 7;
6. The debtor has sufficient resources to pay her debts;
7. The debtor is paying debts to insiders;
8. The schedules inflate expenses to disguise financial well-being;
9. Debtor transferred assets;
10. The debtor's overly utilizing the protections of the Code to the unconscionable detriment of creditors;
11. The debtor employed a deliberate and persistent plan of evading a single major creditor;
12. Debtor failed to make candid and full disclosure;
13. The debts are modest in relation to assets and income; and
14. There are multiple bankruptcies or other procedural "gymnastics."

---

[2]Section 707(a) of the Code provides that the court may dismiss a chapter 7 case "after notice and hearing only for cause . . . ." A definition of "cause" cannot be found in the Code; however, § 707(a) does list three examples of instances where grounds for dismissal exist. 11 U.S.C. § 707(a). The three factors listed do not comprise an exclusive list "as indicated by the language 'including' in the statute." Cappuccetti, 172 B.R. at 39 (citing In re Zick, 931 F.2d 1124 (6th Cir. 1991).

Id. at 682 (citing In re O'Brien, 328 B.R. 669, 675 (Bankr. W.D.N.Y. 2005) (quoting In re Keobapha, 279 B.R. 49, 52 (Bankr. D. Conn. 2002)); See also McDow, 295 B.R. at 79; Zick, 931 F.2d at 1129; and In re Remember Enterprises Inc., 425 B.R. 757, 762-763 (Bankr. M.D.N.C. 2010). That list is intended to serve as a guide because in any allegation that asserts cause to dismiss based on lack of good faith in filing the court must examine the case on its own facts. In re Maide, 103 B.R. 696, 697 (Bankr. W.D. Penn. 1989). The presence of a single factor indicative of the debtor's bad faith in filing will not typically equate to a finding of cause for dismissal of a chapter 7 petition; however, the presence of multiple factors may suffice. In re Eddy, 288 B.R. 500, 505 (Bankr. E.D. Tenn. 2002); In re Spanolia, 199 B.R. 362, 365 (Bankr. W.D. Ky. 1995). When a party asserts that a debtor lacked good faith in filing and has met the burden of showing cause for dismissal, the burden shifts to the debtor to prove her good faith. In re Lombardo, 370 B.R. 506 (Bankr. E.D.N.Y. 2007).

Movants assert that no less than eight of the Marino factors are present in this case and suggest that the combination of those factors merits dismissal of debtor's case under § 707(a). The court turns to an examination of each factor on which movants rely.

It is undisputed that movants are the debtor's largest creditor by far. Movants assert the debtor intentionally "made herself poor" to avoid their collection efforts. As support for that notion they point to the fact that debtor has no credit cards, bank accounts, savings accounts or retirement accounts. Movants ¶ 30. Debtor denies that she has taken any actions to deliberately avoid payment to movants or has acted in bad faith. Moreover, debtor argues that because of the extended period of time that she has been unemployed, the number of creditors she owes "naturally fell off" and she believes that her actions can arguably be deemed responsible as she took action to reduce her creditors knowing she had no income. Debtor ¶ 8. There is some validity to the argument that when

a person is unemployed, she should not be penalized for living within her means. There is no evidence here of a plan to pay all other creditors while avoiding paying on the judgment assessed against the debtor.

Second, there is no evidence the debtor is living an expansive or lavish lifestyle. The debtor took the stand but a line of questioning into her lifestyle was not advanced. Nevertheless, the evidence established that the debtor's husband is a successful attorney and supports his family. Thus, the lifestyle the debtor leads would be based on his ability to provide and not on her hiding money to avoid collection efforts and spending that or other funds on lavish living.

Next, the movants assert that factor three, debtor filed in response to pending litigation or collection efforts, is met based on the facts. According to the movants, the debtor filed bankruptcy for the sole purpose of frustrating their attempts to collect on the sanctions judgment and has employed a deliberate and persistent pattern of evading their collection efforts after the judgment was issued against her in December of 2005. Movants ¶ 31. Debtor denies that she created the Bethel entities with the purpose of defrauding or hindering collection efforts, but instead with the intention to create a source of income as she had been unable to find work. Admittedly, the business ventures failed and debtor filed for bankruptcy; however, it is her assertion that because the filing did not occur on the heels of a judgment being issued there are no grounds for dismissal based on the timing of her petition.

Based on the record, it appears various actions have been pending between these parties since 2002. To suggest now that after eight years of litigation the debtor filed bankruptcy to avoid further litigation seems illogical. By the movants' own admission, the "Michigan Litigation"[3] returned to

---

[3]Referenced made by the parties to include all litigation taking place in Michigan regarding the validity of Scott's retaliation claim against movants.

the Michigan district court in March of 2008. Movants ¶ 7. The debtor's bankruptcy petition was filed approximately two years later after exhausting her appeals of the judgment. Ultimately, it seems that debtor filed her petition with the economic motive of obtaining a fresh start, as opposed to a non-economic motive of ending a nearly decade long legal battle.

The fourth factor the movants contend is met is that the debtor made no efforts to repay debts. In paragraph 32 of their motion, movants assert debtor has made absolutely no effort to repay her sanctions judgment debt. Instead, debtor's actions have required movants to expend ever-increasing legal and financial resources in the hope of obtaining any recovery on the sanctions judgment. Moreover, if the Michigan district court had not involuntarily attached debtor's final two relator's payments in December of 2005 for possible application in satisfaction of the sanctions judgment, movants would have yet to collect any portion of the debt. Regardless of how the money was obtained, movants have received a sizeable payment towards the satisfaction of their judgment. The funds received of $425,000 reduces the outstanding amount owed on the judgment to $1,175,000. The judgment was not final and enforceable until all appeals and other remedies were exhausted, and it is not improper for a person appealing a judgment against her to decline to pay on the judgment while appealing. Furthermore, the judgment was stayed pending the appeal so there was no obligation for Scott to pay prior to the matter being returned to the Michigan District Court in 2008. Additionally, while the *qui tam* payments were garnished and not received as an affirmative payment by the debtor, the fact that over 25% of the debt has been paid from the debtor's funds is the primary issue.

The movants' next argument for dismissal focuses on the equitable principle of fairness. Specifically, does the debtor's use of chapter 7 unfairly disadvantage the movants in their efforts to

collect on their judgment. Obviously the ongoing collection efforts of any creditor are forestalled by a bankruptcy filing. However, the right to file a bankruptcy petition under chapter 7 is a statutory right not easily denied a citizen. Here, no statutes of limitations have run that will prevent the trustee from recovering fraudulent transfers if any occurred. Additionally the movants have timely filed a dischargeability action that will protect their post-discharge rights to seek recovery of the entire amount, if they prevail. The court sees no inherent unfairness in allowing the bankruptcy case to proceed.

The sixth Marino factor that movants assert is applicable is that the debtor has sufficient resources to pay debts. It is generally held that the ability of a debtor to repay their debts is not alone sufficient for dismissal as chapter 7 does not require the debtor be insolvent. See In re Lombardo, 370 B.R. at 512 (the presence of one of these factors alone will not be sufficient to support a dismissal for cause, a finding of a combination of factors may suffice).

The movants assert the debtor knowingly concealed, misrepresented, or transferred assets to place them beyond their reach in anticipation of their collection efforts and/or her bankruptcy filing and but for those actions she would have sufficient funds to pay all or substantially all of the debt she owes them. In support, they note that the summary judgment order allowing sanctions against the debtor was entered in June of 2005. Shortly thereafter, debtor and husband entered a post-nuptial agreement and deposited $443,000 into an account held solely in her husband's name. After entering that agreement, the debtor contacted "asset protection lawyers" who advised her to form two limited liability companies, the Bethel entities, through which hundreds of thousands of dollars were funneled through the accounts of the companies to accounts belonging solely to the debtor's husband. Today the debtor has no assets except for joint interests, with her husband, in a few pieces of real

estate. All funds that existed prior to June of 2005 have disappeared and did so in a mere eighteen months. If all the monies that were transferred to the entities or given directly to debtor's husband were available to be paid toward the debtor's debt to the movants, a substantial amount of the debt could have been paid.

In response to those allegations, debtor denies concealing, misrepresenting, or making unexplained asset transfers prior to filing her petition. Debtor states that she has fully disclosed all transfers to the movants and has reported those transfers, as required, on her bankruptcy petition schedules. By filing chapter 7, debtor has bound herself to the reporting requirements of the Code and if applicable the trustee's power to avoid pre-petition transfers and fully intends to uphold those obligations.

This court shares the movants' concern that there may have been suspicious transfers between the debtor and her husband and/or the Bethel entities. However, without the trustee having performed his duty to investigate, concluding the transfers were fraudulent is premature. At hearing, movants raised the point that they have spent a substantial amount of money and resources in pursuing collection on the judgment and to now have the trustee involved would cause him to expend energy and efforts unnecessarily. This court disagrees. The proper course of action for a creditor is to inform the trustee and request the trustee conduct an investigation or initiate suit and that is the protocol that will be followed in this instance. To date, the trustee has not had reasonable time to investigate the conveyances between the debtor and her husband and the Bethel entities. Upon the completion of an investigation into those conveyances, this court is confident the trustee will take the proper action to recover assets for the estate.

The last <u>Marino</u> factor movants assert is applicable is that the debtor has engaged in

procedural gymnastics to avoid paying on the sanctions judgment. To support that notion the movants assert that the debtor appealed the district court's decision to the U.S. Court of Appeals and then appealed the Court of Appeals decision to the U.S. Supreme Court. The Supreme Court denied certorari on March 4, 2008. The movants go on to suggest that debtor filed a frivolous lawsuit to vacate the sanctions judgment after she was unsuccessful in previous attempts. The motion to vacate the sanctions judgment is pending in the U.S. Court of Appeals for the Sixth Circuit after the Michigan District Court denied the debtor's motion on July 16, 2008. Debtor retorts that the proper use of the legal system to contest the judgment perceived as excessive should not be categorized as procedural gymnastics and while those appeals were being litigated a stay on the payment of the judgments does not suggest a tactic to avoid payment. The appeal of the judgment is still pending in the Sixth Circuit and two amicus briefs have been filed in support of the debtor's positions in the Michigan litigation, sharing some support for her belief that her position is meritorious.

The use of appeals is a litigant's right in the American court system. While some litigation tactics are ultimately motivated by a desire to delay and stall what can be described as an obvious outcome, that is not the case here. The debtor believed that there were appealable issues and utilized her right to appeal and seek redress for those issues. While as yet the debtor has been unsuccessful in her appeals, that lack of success does not unequivocally equate to an abuse of the system or the practice of procedural gymnastics.

While the movants are able to cite a littany of cases to support the proposition that bankruptcy cases can and should be dismissed under § 707(a) when such a filing is prompted by the debtor's bad faith, the cases cited do not present facts similar to those of this case. An individual debtor's actions may not mirror the three examples given by the Code, but cause can be found by determining if the

acts or omissions of the debtor evidence an intent to misuse or abuse the bankruptcy process. McDow, 295 B.R. at 74. Many of the cited cases hinge on the debtor's non-economic and vengeful intent as a key factor in determining that the filing of their petition was done without meeting the implicit good faith requirement. See McDow; Zick; In re Marks, 174 B.R. 37, 41 (E.D. Pa. 1994)(holding that most instances of dismissal for bad faith involve concealment, misrepresentation, or unexplained transfers); Huckfeldt, 39 F.3d at 832 (bad faith may be found when the debtor has a frivolous, non-economic motive for filing). Dismissals for lack of good faith involve the deprivation of a person's statutory rights and under no circumstances should be a remedy denied to a party with ease. Situations warranting a dismissal for lack of good fath are reserved for:

> egregious cases that entail concealed or misrepresented assets and/or sources of income, and excessive and continued expenditures, lavish lifestyle, and intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence.

McDow, 295 B.R. at 81(citing Zick, 931 F.2d at 1128). With the facts as presented on the record, there is not a basis to denote this case as egregious and deserving of dismissal. The fact that "the debtor is merely taking advantage of its legal rights is not, by itself, sufficient to support a finding of bad faith . . . ." Zick, 931 F.2d at 1127 (citing 4 Collier on Bankruptcy, ¶ 707.03 (15th ed. 1989).

*Abstention Pursuant to § 305(a)(1)*

The court, after notice and a hearing, may dismiss . . . , or may suspend all proceedings in a case under this title . . . if the interests of creditors and the debtor would be better served by such dismissal or suspension. 11 U.S.C. § 305(a)(1). The legislative history of § 305 provides that "the court may dismiss or suspend under the first paragraph [subsection (a)], if an arrangement is being worked out by creditors and debtor out of court, there is no prejudice to the rights of creditors in that arrangement and an involuntary case has been commenced by a few recalcitrant creditors to provide

14

a basis for future threats to extract full payment." Id.

Movants suggest that this court should abstain from asserting jurisdiction in this matter because it is primarily a two-party dispute in which both parties have expended "an incredible amount of legal and financial resources debating the merits of this dispute." Movants ¶ 44. However, for this court to abstain from asserting jurisdiction shortly after this case was filed and without proper investigation by the trustee, when jurisdiction clearly exists, cannot be deemed in the best interests of the debtor nor a appropriate utilization of the exceptional concept of abstention under § 305. Accord Hartigan v. Pine Lake Village Apartment Co. (In re Pine Lake Village Apartment Co.), 16 B.R. 750, 754 (Bankr. S.D.N.Y. 1982) (court found that using abstention to dismiss a recently commenced chapter 11 with no proof of ground for dismissal was not in best interest of debtor or proper application of abstention). The debtor has entered this forum of her own volition and for the purpose of surrendering her assets and attaining a reprieve from her substantial obligations. It is undeniable that abstention is in the best interests of the movants, but the movants have not met their burden of evidencing how abstention would serve the best interests of the debtor.

This court finds that based on the totality of the circumstances, dismissal under § 707(a) is not appropriate. Furthermore, abstention is not warranted as it would not be in the debtor's best interest.

**END OF DOCUMENT**